### THE L. F. MUNSON.

(District Court, E. D. Pennsylvania. July 25, 1903.)

#### No. 1 of 1898.

1. SHIPPING—DAMAGE TO CARGO—CUTTING OF LOGWOOD ROOTS TO FACILITATE STOWAGE.

In a suit by a vessel to recover freight for carrying a cargo of logwood roots, the evidence *held* to sustain in part the claim of the cargo owner for damages because of the lessened market value of the roots caused by their being cut by the vessel, to facilitate their stowage, in excess of the amount allowable by the custom of the port of loading.

In Admiralty. Suit to recover freight.

Horace L. Cheyney and John F. Lewis, for libelant.
J. Rodman Paul and Howard H. Yocum, for respondent.

J. B. McPHERSON, District Judge. This action is brought to recover a balance of freight due for carrying a cargo of logwood roots from the port of Montego Bay, on the north shore of the island of Jamaica, to the port of Chester, on the Delaware river. The cargo was stowed by the ship, and the defense is that the roots were so much injured by improper cutting, due to the anxiety of the master to load the vessel as compactly as possible, that their market value was diminished by an amount at least as great as the balance of freight remaining unpaid. There is no doubt that the shippers of the cargo, J. E. Kerr & Co., made an allowance to the consignee, the Sharpless Dyewood Extract Company of Chester, by reason of the deficient size of the roots as they were delivered upon the consignee's wharf, and the dispute requires the court to decide whether such defect in quality was found in the roots that were delivered to the ship by Kerr & Co., or was due to excessive cutting in order to stow the cargo more solidly, and therefore more to the advantage of the vessel.

There is some conflict in the testimony, but I think the weight of the evidence is decidedly in favor of the respondent, so far as concerns most of the sum in controversy. It is agreed that logwood roots decrease in value as they diminish in size. For example, this cargo was sold at $18 per ton, but for pieces under 5 pounds in weight the Dye Works Company was to pay only $8 per ton; and I think the testimony establishes clearly that the size of the roots is regarded by the

trade as so essential that a ship loading at Montego Bay is forbidden by the custom of the port to cut more than 5 per cent. of the cargo for purposes of stowage, and may not cut even this small percentage to a less weight than 5 pounds to the piece. When the ship arrived in Chester she unloaded 353 tons 60 cwt., of which 34 tons 120 cwt., or nearly 10 per cent., was in pieces weighing less than 5 pounds each. This was a fault of the ship, if the small size of the pieces was due to cutting for purposes of stowage, and upon all the evidence I am of opinion that this explanation of the matter should be accepted. The rest of the cargo, 287 tons 130 cwt., while it was composed of pieces and roots weighing more than 5 pounds each, was of such inferior sizes that the consignee claimed, and received from the shippers, an allowance of $1 per ton. The respondents claim that this defect in quality was wholly due to improper cutting by the ship, but I am unable to sustain this contention altogether, although I have no doubt that it should be sustained in part. The testimony leaves it somewhat conjectural what proportion of this deficient quality is due to the fault of the ship, and what proportion is probably due to the comparatively small size (although above 5 pounds) of the roots as they were shipped by Kerr & Co., but I think I may not be far wrong if I charge one-half against each of the parties.

The libelant is therefore entitled to a decree for one-half of $287.06, with interest from January 31, 1898, two-thirds of the total costs to be paid by the libelant, and one-third by the respondent.